## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF WISCONSIN

In re:

| | |
|---|---|
| ANADA, INC., | Chapter 11 |
| | Case No. 24-10662 |
| | (Jointly Administered) |
| Debtor. | |

| | |
|---|---|
| OVAINNOVATIONS, LLC, | Chapter 11 |
| | Case No. 24-10663 |
| Debtor. | |

| | |
|---|---|
| CRIMSON HOLDINGS, LLC, | Chapter 11 |
| | Case No. 24-10664 |
| Debtor. | |

### JOINT CHAPTER 11 PLAN OF LIQUIDATION FOR ANADA, INC.
### OVAINNOVATIONS, LLC, AND CRIMSON HOLDINGS, LLC

## Table of Contents

**Page**

ARTICLE I    DEFINITIONS AND CONSTRUCTION OF TERMS ........................................................ 1

    1.1    Definitions.................................................................................................. 1

    1.2    Interpretation; Application of Definitions and Rules Construction...................... 9

ARTICLE II    TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX
CLAIMS ..................................................................................................... 9

    2.1    Non-Classification ....................................................................................... 9

    2.2    Administrative Expense Claims..................................................................... 9

    2.3    Professional Fee Claims.............................................................................. 10

    2.4    Priority Tax Claims .................................................................................... 10

ARTICLE III    CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS ............. 10

    3.1    Classification............................................................................................. 10

    3.2    Class I Other Priority Claims ...................................................................... 11

    3.3    Class II Secured Claim of DFA against Crimson ........................................... 11

    3.4    Class III Secured Claim of BM LLC against Ova ........................................... 12

    3.5    Class IV General Unsecured Claims against Anada (including the Secured
Claim BM LLC asserts against Anada) ........................................................ 12

    3.6    Class V General Unsecured Claims against Crimson...................................... 13

    3.7    Class VI General Unsecured Claims against Ova (including Secured
Claim asserted by Jeffrey Rettig against Ova)............................................... 13

    3.8    Class VII Equity Interests ........................................................................... 14

ARTICLE IV    MEANS FOR IMPLEMENTATION OF THE PLAN ...................................................... 14

    4.1    Establishment of the Liquidation Trust........................................................ 14

    4.2    Oversight Committee .................................................................................. 14

    4.3    Appointment of the Liquidation Trustee....................................................... 15

    4.4    Beneficiaries of Liquidation Trust ............................................................... 15

    4.5    Vesting and Transfer of Assets to the Liquidation Trust................................. 15

    4.6    Liquidation Trust Expenses ........................................................................ 15

    4.7    Role of the Liquidation Trustee. .................................................................. 15

    4.8    Preservation of Right to Conduct Investigations ........................................... 17

    4.9    Prosecution and Resolution of Causes of Action........................................... 17

    4.10    Federal Income Tax Treatment of the Liquidation Trust for the Assets............. 17

i

**Table of Contents**

(continued)

| | | |
|---|---|---|
| 4.11 | Limitation of Liability | 18 |
| 4.12 | Term of the Liquidation Trust | 18 |
| 4.13 | Retention of Professionals | 18 |
| 4.14 | Conflicts between Liquidation Trust Agreement and the Plan | 18 |
| 4.15 | Cancellation of Existing Securities and Agreements | 18 |
| 4.16 | Automatic Stay | 19 |
| 4.17 | Committees | 19 |
| 4.18 | Books and Records | 19 |
| 4.19 | D&O Insurance Policies | 19 |
| 4.20 | Intercompany Claims. | 19 |
| ARTICLE V | THE DEBTORS | 19 |
| 5.1 | Corporate Existence | 19 |
| 5.2 | Substantial Consummation | 20 |
| 5.3 | Closing of the Chapter 11 Cases | 20 |
| 5.4 | Operation of the Debtors Between the Confirmation Date and the Effective Date | 20 |
| ARTICLE VI | PROVISIONS GOVERNING ACCEPTANCE OR REJECTION OF THE PLAN | 20 |
| 6.1 | Voting of Claims | 20 |
| 6.2 | Nonconsensual Confirmation | 20 |
| ARTICLE VII | PROVISIONS GOVERNING DISTRIBUTIONS | 20 |
| 7.1 | Distributions Made by the Liquidation Trustee | 20 |
| 7.2 | Method of Delivery of Distributions Under the Plan | 20 |
| ARTICLE VIII | PROVISIONS FOR RESOLVING AND TREATING DISPUTED CLAIMS AND ADMINISTRATIVE EXPENSE CLAIMS | 23 |
| 8.1 | Objections to and Resolution of Administrative Expense Claims and Other Claims. | 23 |
| 8.2 | No Distribution Pending Allowance, Subsequent Distribution | 23 |
| 8.3 | Excess Funds | 23 |
| 8.4 | Estimation | 23 |
| 8.5 | Remedies Not Exclusive | 24 |

**Table of Contents**
(continued)

**Page**

ARTICLE IX EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................................................. 24

    9.1    Deemed Rejected .................................................................. 24

    9.2    Rejection Claims. ................................................................. 24

    9.3    Assumed Contracts .............................................................. 24

ARTICLE X    EFFECT OF CONFIRMATION .................................................... 24

    10.1    Term of Bankruptcy Injunction or Stays .................................. 24

    **10.2**    **Injunction** ....................................................................... 24

    10.3    Binding Effect ................................................................... 25

ARTICLE XI    CONDITIONS TO CONFIRMATION ............................................. 25

    11.1    Conditions Precedent to Confirmation..................................... 25

    11.2    Conditions Precedent to Occurrence of Effective Date ................ 25

    11.3    Waiver of Conditions .......................................................... 26

    11.4    Notice of Effective Date ....................................................... 26

ARTICLE XII    RELEASES, SETTLEMENTS, AND EXCULPATIONS, AND RELATED PROVISIONS....... 26

    **12.1**    **Exculpation** .................................................................... 26

    **12.2**    **Injunction** ...................................................................... 26

    12.3    Preservation of Causes of Action............................................ 26

    12.4    Releases of Liens ............................................................... 27

ARTICLE XIII    RETENTION OF JURISDICTION ................................................. 28

    13.1    Jurisdiction of Bankruptcy Court ........................................... 28

ARTICLE XIV    MISCELLANEOUS PROVISIONS ................................................ 29

    14.1    Effectuating Documents and Further Transactions...................... 29

    14.2    Exemption from Transfer Taxes ............................................. 29

    14.3    Post-Effective Date Fees and Expenses .................................... 29

    14.4    Amendment or Modification of the Plan ................................... 30

    14.5    Severability ...................................................................... 30

    14.6    Revocation or Withdrawal of the Plan...................................... 30

    14.7    Notices ............................................................................ 30

    14.8    Governing Law .................................................................. 31

**Table of Contents**
(continued)

| | | |
|---|---|---|
| 14.9 | Headings | 31 |
| 14.10 | Exhibits and Schedules | 31 |
| 14.11 | Filing of Additional Documents | 31 |
| 14.12 | Plan Controls | 31 |
| 14.13 | Subordination Rights | 31 |
| 14.14 | Section 1125(e) of the Bankruptcy Code | 32 |
| 14.15 | Return of Security Deposits | 32 |
| 14.16 | Tax Liability | 32 |

## DEBTORS' JOINT PLAN OF LIQUIDATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

The Debtors, Anada, Inc. (Case No. 24-10662), OvaInnovations, LLC. (Case No. 24-10663), and Crimson Holdings, LLC (Case No. 24-10664), and the Official Committees of Unsecured Creditors of OvaInnovations, LLC and Crimson Holdings, LLC propose the following Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code pursuant to sections 1121(a) and 1123 of title 11 of the United States Code.

The Debtors and the Committees are the proponents of the Plan (the "Proponents") within the meaning of section 1129 of the Bankruptcy Code. Reference is made to the Disclosure Statement distributed contemporaneously herewith for a discussion of the Debtors' history, businesses, properties, results of operations and historical financial information, projections and risk factors, and for a summary and analysis of the Plan and certain related matters. All holders of Claims who are entitled to vote on the Plan are strongly encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan.

### Article I

### Definitions and Construction of Terms

1.1    Definitions.  As used herein, the following terms have the respective meanings specified below, unless the context otherwise requires:

(a)    Administrative Expense Claim means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases and entitled to priority under sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the estates of the Debtors, (b) any actual and necessary costs and expenses of operating the businesses of the Debtors, (c) any costs and expenses of the Debtors in connection with the administration and implementation of the Plan, (d) any indebtedness or obligations incurred or assumed by the Debtors or under the Plan in connection with the conduct of their businesses, including, without limitation, for the acquisition or lease of property or an interest in property or the rendition of services, (e) all compensation and reimbursement of expenses to the extent Allowed by the Bankruptcy Court under Sections 330 or 503 of the Bankruptcy Code, and (f) any fees or charges assessed against the estates of the Debtors under section 1930 of Chapter 123 of title 28 of the United States Code.

(b)    Administrative Expense Claim Bar Date means (i) the date that is thirty (30) days after the Effective Date for all Persons other than Case Professionals and (ii) for Case Professionals, the date that is forty-five (45) days after the Effective Date.

(c)    Affiliate has the meaning given to such term in section 101(2) of the Bankruptcy Code.

(d)    Allowed means with reference to any Claim (including any Administrative Expense Claim) or Equity Interest:  (a) any Claim against or Equity Interest in the Debtors,

proof of which was filed within the applicable period of limitation fixed by the Bankruptcy Court in accordance with Rule 3003(c)(3) of the Bankruptcy Rules (or, in the case of Professional Fees of a Case Professional, pursuant to this Plan), or if no proof of Claim was so filed or as to which the applicable proof of Claim has been withdrawn or Disallowed, any Claim against the Debtors which has been listed by the Debtors in the Schedules, as such Schedules may be amended from time to time in accordance with Rule 1009 of the Bankruptcy Rules prior to the closing of the Chapter 11 Cases, as fixed, liquidated, non-contingent and undisputed in amount (i) as to which no objection to the allowance thereof, or action to equitably subordinate or otherwise limit recovery with respect thereto, has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order, (ii) as to which no action has been commenced to avoid such Claim or Equity Interest within the applicable period of limitation fixed by the Plan, or (iii) as to which an objection has been interposed, to the extent such Claim or Equity Interest has been allowed (whether in whole or in part) by a Final Order, (b) if no proof of Equity Interest was so filed, any Equity Interest listed in the consolidated stockholders list maintained by Debtors as of the Confirmation Date, or (c) any Claim to the extent that it has been allowed by a Final Order; provided, however, that Claims Allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder unless otherwise specified herein or by Final Order. "Allowed Claims" shall not, for any purpose under the Plan, include interest, penalties or late charges on such Claims from and after the Petition Date unless otherwise expressly provided for in the Plan or by Final Order. In addition, "Allowed Claim" shall not include any Claim subject to disallowance in accordance with section 502(d) of the Bankruptcy Code.

(e)      Anada means Anada, Inc.

(f)      Anada Unsecured Carveout means the amount of Ten Thousand and 00/100 dollars ($10,000.00).

(g)      Assets mean all assets of the Debtors, including, without limitation, all real, personal, tangible and intangible property of the Debtors, including, without limitation, any property of the kind or nature accounted for on the Debtors' balance sheet as of the Effective Date.

(h)      Avoidance Actions means any action authorized by chapter 5 of the Bankruptcy Code, including, but not limited to, claims arising under sections 542, 544, 545, 547, 548, 549, 550, 551, 553, or state law equivalents.

(i)      BM LLC means Balanced Management, LLC.

(j)      Ballot means the form distributed to each holder of an impaired Claim that is entitled to vote to accept or reject the Plan, on which is to be indicated acceptance or rejection of the Plan.

(k)      Bankruptcy Code means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

(l)    <u>Bankruptcy Court</u> means the United States Bankruptcy Court for the Western District of Wisconsin, having jurisdiction of and over the Chapter 11 Cases, and to the extent of any reference under section 157 of title 28 of the United States Code, the unit of such District Court under section 151 of title 28 of the United States Code.

(m)    <u>Bankruptcy Rules</u> means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, and any Local Bankruptcy Rules.

(n)    <u>Bar Date Order</u> means the order at ECF No. 71 as modified by the order at ECF No. 256.

(o)    <u>Business Day</u> means any day other than a Saturday, Sunday or any other day on which commercial banks in Madison, Wisconsin are required or authorized to close by law or executive order.

(p)    <u>Case Professionals</u> means persons retained pursuant to sections 326, 327, 328 and 1103 of the Bankruptcy Code or retained post-confirmation to perform professional services.

(q)    <u>Cash</u> means the equivalent of legal tender of the United States of America, however paid or transmitted.

(r)    <u>Causes of Action</u> means, without limitation, any and all actions, causes of action, liabilities, obligations, rights, suits, damages, judgments, claims and demands whatsoever, whether known or unknown, existing or hereafter arising, whether pending or not, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date, including, without limitation, all Avoidance Actions.

(s)    <u>Chapter 11 Cases</u> means the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors which are being jointly administered, styled <u>In re Anada, Inc.</u>, Case No. 24-10662, pending before the Bankruptcy Court.

(t)    <u>Claim</u> has the meaning provided in section 101(5) of the Bankruptcy Code.

(u)    <u>Claims Objection</u> means any objection asserted or filed against the holder of a Claim under the Bankruptcy Code or the Bankruptcy Rules, to determine the extent, validity or priority of such Claim.

(v)    <u>Claims Register</u> means the register of Claims and Equity Interests filed against a Debtor.

(w)    <u>Class</u> means a category of holders of Claims or Equity Interests as set forth in Article III of the Plan.

(x)    <u>Closing Date</u> means October 31, 2024, the closing date of the Sale.

(y)  <u>Collateral</u> means any property or interest in property of the Estates of the Debtors subject to a Lien to secure the payment or performance of a Claim, which Lien or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code, applicable state law, Final Order or by agreement of the holder of the Lien.

(z)  <u>Committees</u> means the statutory committees of holders of unsecured Claims in the Chapter 11 Cases of OvaInnovations, LLC and of Crimson Holdings, LLC appointed pursuant to section 1102 of the Bankruptcy Code, as such committees may be reconstituted from time to time.

(aa)  <u>Confirmation Date</u> means the date on which the Confirmation Order is entered on the docket in the Chapter 11 Cases.

(bb)  <u>Confirmation Hearing</u> means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

(cc)  <u>Confirmation Order</u> means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

(dd)  <u>Confirmed</u> means that the Confirmation Order has been entered on the docket in the Chapter 11 Cases.

(ee)  <u>Crimson</u> means Crimson Holdings, LLC.

(ff)  <u>D&O Insurance Policies</u> means all primary and excess insurance policies of the Debtors that provide for, among other things, coverage for liability related to the actions or omissions of the Debtors' directors and officers.

(gg)  <u>DFA</u> means Dairy Farmers of America.

(hh)  <u>Disallowed Claim</u> means (a) a Claim, or any portion thereof, that has been disallowed by a Final Order, (b) a Claim that was not scheduled by the Debtors as a fixed, liquidated, noncontingent and undisputed Claim and which has not been timely filed or deemed timely filed with the Bankruptcy Court pursuant to this Plan, the Bankruptcy Code or any Final Order, or (c) a Claim that is expressly disallowed under the terms of the Plan.

(ii)  <u>Disclosure Statement</u> means the disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, as the same may be amended, supplemented, or modified from time to time and as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

(jj)  <u>Disputed</u> means every Claim (i) which has been or hereafter is listed in the Debtors' Schedules as unliquidated, disputed or contingent or which is not listed in the Debtors' Schedules, (ii) which is specifically disputed under a particular provision of the Plan, (iii) as to which a timely objection has been interposed under the Plan and not withdrawn or determined by a Final Order, (iv) as to which a request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3019 has

been made and not withdrawn or determined by a Final Order, or (v) as to which a proof of which was required to be filed by order of the Bankruptcy Court but as to which a proof of Claim was not timely or properly filed. A Claim that is Disputed by the Debtors or the Liquidation Trustee as to its amount only, shall be deemed Allowed in the amount the Debtors or the Liquidation Trustee admit is owing, if any, and Disputed as to the excess.

(kk)   <u>Distributions</u> mean payments of Cash to be made in accordance with the Plan.

(ll)   <u>Distribution Record Date</u> means the date on which the Order approving the Disclosure Statement under section 1125 of the Bankruptcy Code is signed.

(mm)   <u>Effective Date</u> means the later of (i) that day which is the first Business Day following the Confirmation Date on which the conditions precedent specified in Article XI of this Plan have been satisfied or waived or (ii) fourteen (14) days after the Confirmation Date.

(nn)   <u>Entity</u> shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

(oo)   <u>Equity Interest</u> means the interest of any holder of any equity securities or other interests in any of the Debtors represented by the issued and outstanding shares of common or preferred stock (and all series thereof) in any of the Debtors, whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such interest which was in existence immediately prior to the Petition Date.

(pp)   <u>Estates</u> mean the estates of the Debtors in these Chapter 11 Cases, created pursuant to section 541 of the Bankruptcy Code upon the commencement of these Chapter 11 Cases.

(qq)   <u>Exculpated Parties</u> means, collectively, the Debtors, the Debtors' directors and officers (solely in their capacity as such), the Committees and the individual members thereof (solely in their capacity as such), and each of their respective Representatives (each of the foregoing in its individual capacity as such), provided that such director, officer, or representative served in such capacity on or after the Petition Date.

(rr)   <u>Final Order</u> means an order of the Bankruptcy Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari or other proceedings for reargument or rehearing shall have been waived in writing in form and substance satisfactory to the Committees, or in the event that an appeal, writ of certiorari or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been upheld by the highest court to which such order was appealed, or from which certiorari, reargument or rehearing was sought and the time to take any further appeal, petition for certiorari or other proceedings for reargument or rehearing shall have expired, *provided*, *however*, that the possibility that a motion under Rule 59 or Rule 60 of the

Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be filed with respect to such order shall not cause such order not to be a Final Order.

(ss)   <u>General Unsecured Claim</u> means a Claim other than an Administrative Expense Claim, a Priority Tax Claim, an Other Priority Claim, or a Secured Claim.

(tt)   <u>Impaired</u> means when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

(uu)   <u>Insider</u> has the meaning given to such term in section 101(31) of the Bankruptcy Code.

(vv)   <u>Intercompany Claim</u> means any Claim against any Debtor held by another Debtor.

(ww)   <u>Bar Date</u> means the date established by the Bar Date Order as the deadline to file a proof of Claim for claims of any kind that arose before the Petition Date, whether secured, priority, or unsecured nonpriority claims, including claims held by government units.

(xx)   <u>Lien</u> has the meaning set forth in section 101(37) of the Bankruptcy Code (but a lien that has or may be avoided pursuant to an Avoidance Action shall not constitute a Lien).

(yy)   <u>Liquidation Trust</u> means the entity created by the Liquidation Trust Agreement under Section 4.1 of the Plan or previously approved by the Bankruptcy Court prior to the Confirmation Hearing.

(zz)   <u>Liquidation Trust Agreement</u> means the Liquidation Trust Agreement as established under Section 4.1 of the Plan and attached as **<u>Exhibit A</u>** to the Plan Supplement.

(aaa)   <u>Liquidation Trustee</u> means the person who will act under the Liquidation Trust Agreement as trustee as provided in Section 4.3 of the Plan, or any successor as provided for in the Liquidation Trust Agreement.

(bbb)   <u>Local Bankruptcy Rules</u> means the rules adopted by the Bankruptcy Court pursuant to Bankruptcy Rule 9029.

(ccc)   <u>Net Recoveries</u> means the net cash proceeds of all Causes of Action, after payment of all costs and expenses reasonably incurred in connection with the collection or recovery of such Causes of Action by the Debtors and/or Liquidation Trustee.

(ddd)   <u>Other Net Proceeds</u> means the net Cash proceeds of the disposition of the Assets of the Chapter 11 Estates disposed of under the Sale Order and the terms of the Plan by the Debtors and/or the Liquidation Trustee or received by any of the Estates under this Plan.

(eee)    <u>Other Priority Claim</u> means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code over General Unsecured Claims, but only to the extent entitled to such priority.

(fff)    <u>Ova</u> means OvaInnovations, LLC

(ggg)    <u>Oversight Committee</u> means the committee appointed as of the Effective Date pursuant to Section 4.2 of this Plan and which shall direct the Liquidation Trustee to carry out its powers in accordance with the Plan, the Liquidation Trust Agreement, the Confirmation Order, and any other Final Order of the Bankruptcy Court.

(hhh)    <u>Person</u> shall have the meaning given to such term in section 101(41) of the Bankruptcy Code.

(iii)    <u>Petition Date</u> means April 8, 2024, the date the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

(jjj)    <u>Plan</u> means this joint plan of the Proponents including, without limitation, any exhibits, supplements, appendices and schedules hereto, either in its present form or as the same may be altered, amended, or modified from time to time.

(kkk)    <u>Plan Assets</u> means (a) the Sale Proceeds; (b) the Net Recoveries; (c) the Other Net Proceeds, and (d) any other Assets of the Debtors after the payment of Allowed Administrative Claims, Allowed Other Priority Claim, and Allowed Tax Priority Claims.

(lll)    <u>Plan Supplement</u> means any supplement to the Plan that shall be filed with the Bankruptcy Court and served not later than seven (7) days before the deadline for the submission of Ballots.

(mmm)<u>Priority Claim Reserve</u> means the Cash reserve to be created by the Debtors and distributed to the Liquidation Trustee on the Effective Date in amounts sufficient for the Liquidation Trustee to make distributions under the Plan and the Liquidation Trust Agreement on account of all Allowed and Disputed Priority Tax Claims and Other Priority Claims as of the Effective Date in accordance with Section 1129(a)(9) of the Bankruptcy Code.

(nnn)    <u>Priority Tax Claim</u> means any Claim of a governmental unit of the kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

(ooo)    <u>Professional Fees</u> means fees incurred by a Case Professional for compensation or reimbursement of costs and expenses relating to services incurred prior to and including the Effective Date.

(ppp)    <u>Professional Fee Escrow</u> means a non-interest-bearing escrow account to be delivered to the Liquidation Trustee on the Effective Date to be held by a financial institution acceptable to the Oversight Committee pending payment of any Claim of Case

Professionals that was incurred on or before the Effective Date and is Allowed by Final Order.

(qqq)   <u>Professional Fee Claims</u> means any Claim of a Case Professional for compensation or reimbursement of costs and expenses relating to services incurred prior to and through the Effective Date, when and to the extent any such Claim is Allowed by Final Order.

(rrr)   <u>Pro Rata</u> means, when used with reference to a distribution of property to holders of Allowed Claims in a particular Class, or other specified group of Claims pursuant to Article III of the Plan, proportionately so that with respect to a particular Allowed Claim in such Class or in such group, the ratio of (a)(i) the amount of property to be distributed on account of such Claim to (ii) the amount of such Claim, is the same as the ratio of (b)(i) the amount of property to be distributed on account of all Allowed Claims in such Class or group of Claims to (ii) the amount of all Allowed Claims in such Class or group of Claims.

(sss)   <u>Representatives</u> mean, with regard to any Person, its officers, directors, employees, advisors, attorneys, professionals, accountants, investment bankers, financial advisors, consultants, agents and other representatives (including their respective officers, directors, employees, members and professionals), each of the foregoing in their capacity as such.

(ttt)   <u>Sale</u> means the sale of substantially all of the assets of the Debtors pursuant to section 363(b) of the Bankruptcy Code, as approved by the Sale Order.

(uuu)   <u>Sale Order</u> means the Final Order approving the Sale entered by the Bankruptcy Court on October 28, 2024 [ECF No. 423].

(vvv)   <u>Sale Proceeds</u> means the net Cash proceeds received by the Estates from the closing of the Sale.

(www)   <u>Schedules</u> means the schedules of assets and liabilities and the statement of financial affairs filed with the Bankruptcy Court by any Debtor under section 521 of the Bankruptcy Code and Bankruptcy Rule 1007 and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended from time to time.

(xxx)   <u>Secured Claim</u> means any Claim, to the extent reflected in a Debtor's Schedules or a proof of claim as a Secured Claim, which is actually secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, Final Order or by agreement with the holder of the Lien, or, in the event that such Claim is subject to permissible setoff under section 553 of the Bankruptcy Code, to the extent of such permissible setoff.

(yyy)   <u>Secured Tax Claim</u> means any Secured Claim of a governmental unit for unpaid taxes that is secured by a Lien on property arising from operation of a statute.

(zzz)    Tax Code means the United States Internal Revenue Code of 1986, as amended.

(aaaa)  Unimpaired means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

(bbbb) United States means the United States of America, its agencies, departments, or agents.

(cccc)  U.S. Trustee means the United States Trustee appointed under section 591, title 28, United States Code to serve in the Western District of Wisconsin.

1.2    Interpretation; Application of Definitions and Rules Construction. Whenever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter. Unless otherwise specified, all section, article, schedule or exhibit references in the Plan are to the respective Section in, Article of, Schedule to, or Exhibit to, the Plan.  The words "herein", "hereof", "hereto", "hereunder" and other words of similar import refer to the Plan as a whole and not to any' particular section, subsection or clause contained in the Plan.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.  A term used herein that is not defined herein that is used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code. Unless the context indicates otherwise, all terms defined in this Plan have the defined meaning throughout the Plan regardless of the section or article where such term is defined.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.  Unless otherwise indicated herein, all references to dollars means United States dollars.  In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided herein, the provisions of Bankruptcy Rule 9006(a) shall apply.

**Treatment of Administrative Expense Claims and Priority Tax Claims**

2.1    Non-Classification.  As provided in section 1123(a) of the Bankruptcy Code, Administrative Expense Claims (including Claims for Professional Fees) and Priority Tax Claims are not classified for purposes of voting on or receiving distributions under the Plan.  All such Claims are instead treated separately pursuant to the terms set forth in this Article II.

2.2    Administrative Expense Claims.

(a)    Except to the extent that any Entity entitled to payment of an Allowed Administrative Expense Claim agrees to a different treatment, each holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to such Allowed Administrative Expense Claim on the later of the Effective Date and the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable.  Allowed Administrative Expense Claims as of the date of the Disclosure Statement are identified in article IV.D of the Disclosure Statement.

(b)    Any person or entity that asserts an Administrative Expense Claim, which has not otherwise been Allowed, who fails to file a motion pursuant to section 503 of the Bankruptcy Code with the Bankruptcy Court on or before the Administrative Expense Claim Bar Date shall be forever barred from doing so.  The notice provided herein is deemed sufficient notice of the Administrative Expense Claim Bar Date to the holders of Administrative Expense Claims.

2.3    <u>Professional Fee Claims.</u> All Entities seeking an award by the Bankruptcy Court of compensation for services rendered and reimbursement of expenses incurred through and including the Effective Date under sections 330 or 331 of the Bankruptcy Code or entitled to the priorities established under sections 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code shall (a) file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by the Administrative Expense Claim Bar Date or such other date as is fixed by the Bankruptcy Court and (b) if granted such an award by the Bankruptcy Court, be paid in full in Cash in such amounts as are Allowed by the Bankruptcy Court (i) on the date upon which such Administrative Expense Claim becomes an Allowed Administrative Expense Claim or as soon thereafter as is practicable, (ii) upon such other terms as may be mutually agreed upon between such holder of an Administrative Expense Claim and the Liquidation Trustee, or (iii) in accordance with the terms of any applicable order entered by the Bankruptcy Court.

2.4    <u>Priority Tax Claims.</u>  Except to the extent that the holder of an Allowed Priority Tax Claim has been paid prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Priority Tax Claim Cash in an amount equal to such Allowed Priority Tax Claim on the later of the Effective Date and the date such Priority Tax Claim becomes an Allowed Priority Tax Claim; *provided*, *however*, that the Liquidation Trustee shall not pay any premium, interest, penalty, or fee in connection with such Allowed Priority Tax Claim unless the holder of such Allowed Priority Tax Claim has filed a proof of claim for such Allowed Priority Tax Claim that demonstrates that the premium, interest, penalty, or fee sought in connection with such Allowed Priority Tax Claim satisfies the criteria set forth in Bankruptcy Code section 507(a)(8)(G).  The Allowed Priority Tax Claims shall be paid by the Liquidation Trustee from the Priority Claims Reserve.

## Article III

## Classification and Treatment of Claims and Equity Interests

3.1    <u>Classification.</u>  Claims, other than Administrative Expense Claims and Priority Tax Claims, are classified for all purposes, including voting, confirmation and distribution pursuant to the Plan, as set forth below.

| Class | Claim Type | Treatment |
|-------|-----------|-----------|
| Class I | Other Priority Claims | Unimpaired/Deemed to Accept |
| Class II | Secured Claim of Dairy Farmers of America against Crimson | Impaired – May Vote |
| Class III | Secured Claim of BM LLC against Ova | Impaired/Deemed to Reject |
| Class IV | General Unsecured Claims against Anada (including asserted Secured Claim of BM LLC against Anada) | Impaired – May Vote |
| Class V | General Unsecured Claims against Crimson | Impaired – May Vote |
| Class VI | General Unsecured Claims against Ova (including asserted Secured Claim of Jeffrey Rettig against Ova) | Impaired – May Vote |
| Class VII | Equity Interests | Impaired/Deemed to Reject |

3.2    <u>Class I Other Priority Claims</u>

(a)    <u>Impairment and Voting</u>.  Class I is unimpaired by the Plan.  Each holder of an Other Priority Claim is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.  <u>Treatment</u>.  Except to the extent that a holder of an Allowed Other Priority Claim agrees to a different treatment, each holder of an Allowed Other Priority Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim on the later of the Effective Date and the date such Other Priority Claim becomes an Allowed Other Priority Claim, or as soon thereafter as is practicable; *provided*, *however*, that the Liquidation Trustee shall not pay any premium, interest, penalty, or fee in connection with such Allowed Other Priority Claims.  The Allowed Other Priority Claims shall be paid by the Liquidation Trustee from the Priority Claim Reserve.<u>Class II Secured Claim of DFA against Crimson</u>

(a)    <u>Impairment and Voting</u>.  Class II is impaired by the Plan. Class II is entitled to vote on the Plan. <u>Treatment</u>. On the Petition Date, DFA asserted that it held a properly perfected first Lien upon the real property owned by Crimson and certain of Crimson's personal property related to the real property owned by Crimson.  On the Closing Date, DFA was paid $2,391,508.47 without obtaining court approval as to the amount of such payment.  The Committees dispute that DFA was owed $2,391,508.47 and have asserted that DFA must return $252,729.56 to the Crimson Estate. In December of 2024, DFA refunded to the Debtors $61,650.25.  If DFA votes to accept the Plan, then (i) DFA shall return $150,000 to the Crimson Estate within seven (7) calendar days after the Effective Date, (ii) after the return of $150,000 to the Crimson Estate, DFA shall retain all proceeds from the sale of the real property owned by Crimson in DFA's possession, and (iii) and all

claims against DFA of the Debtors shall be released. If DFA votes to reject the Plan or does not vote, then the Liquidating Trustee may file suit against DFA to recover any overpayment and DFA shall place the sum of $191,079.31 in an interest-bearing escrow account pending resolution of such lawsuit.

3.4    Class III Secured Claim of BM LLC against Ova

(a)    Impairment and Voting.  Class III is impaired by the Plan.  The holder the Secured Claim of BM LLC receives no property under the Plan, shall not be entitled to vote on the Plan, and is deemed to have rejected the Plan.Treatment.  BM LLC asserts that Anada d/b/a Ova entered into an Agreement for the Purchase and Sale of Future Receipts with it on 11/29/2023. *See* Ova Case, Proof of Claim No. 7.  BM LLC asserts that it holds a perfected Lien on Ova's assets.  *Id.*  The Secured Claim of BM LLC is Disallowed because (i) the January 23, 2024, UCC-1 filed by BM LLC and attached to Ova Case, Proof of Claim No. 7 as Part 3 ("BM Ova UCC") was filed with the Wisconsin Department of Financial Institutions and not in Iowa, where Ova is organized; (ii) the BM Ova UCC was filed fewer than 90 days prior to the Petition Date and thus would have been avoidable as a preferential transfer under 11 U.S.C. § 547 had it been filed properly in Iowa; and (iii) even if the BM Ova UCC had been filed properly in Iowa and were not avoidable as a preference, it was filed subsequent to the August 10, 2023, UCC-1 filed by IsoNova Technologies, LLC in Iowa, and thus any lien BM LLC could have obtained would have been junior to the IsoNova Technologies, LLC lien, which lien encompassed substantially all of the Ova estate's assets and which lien was avoided under 11 U.S.C. § 548 and preserved for the benefit of the Ova estate under 11 U.S.C. § 551 (*see* Docs 466, 496).

The Secured Claim of BM LLC against Ova receives no distribution under the Plan because, in addition to being unsecured, it is invalid because Ova is a separate legal entity from Anada and did not enter into any contract with BM LLC.  The Secured Claim of BM LLC is thus hereby Disallowed and expunged.In addition, all of Ova's claims against BM LLC of whatever nature are preserved and transferred to the Liquidating Trustee. Class IV General Unsecured Claims against Anada (including the Secured Claim BM LLC asserts against Anada)

(a)    Impairment and Voting.  Class IV is impaired by the Plan.  Each holder of a General Unsecured Claim against Anada is entitled to vote to accept or reject the Plan.Inclusion of BM LLC Claim Against Anada. BM LLC asserts that Anada d/b/a Ova entered into an Agreement for the Purchase and Sale of Future Receipts with it on 11/29/2023. *See* Anada Case, Proof of Claim No. 4.  BM LLC asserts that it holds a perfected Lien on Anada's assets.  *Id.*  The Secured Claim of BM LLC against Anada is Disallowed as Secured Claim because (i) the January 23, 2024, UCC-1 filed by BM LLC and attached to Anada Case, Proof of Claim No. 4 as Part 3 ("BM Anada UCC") was filed with the Wisconsin Department of Financial Institutions and not in Delaware, where Anada is organized; and (ii) the BM Anada UCC was filed fewer than 90 days prior to the Petition Date and thus would have been avoidable as a preferential transfer under 11 U.S.C. § 547 had it been filed properly in Delaware; and (iii) even if the BM Anada UCC had been filed properly in Delaware and were not avoidable as a preference, it was filed subsequent to the August 10, 2023, UCC-1 filed by IsoNova Technologies, LLC in Delaware, and thus any

lien BM LLC could have obtained would have been junior to the IsoNova Technologies, LLC lien, which lien encompassed substantially all of the Anada estate's assets and which lien was avoided under 11 U.S.C. § 548 and preserved for the benefit of the Anada estate under 11 U.S.C. § 551 (*see* Docs 466, 496).

BM LLC's asserted Secured Claim against Anada is thus treated as unsecured and classified with the Class IV General Unsecured Claims against Anada and is subject to further review and possible objection by the Liquidating Trustee.

In addition, all of Anada's claims against BM LLC and any other unsecured creditor of Anada, of whatever nature, are preserved and transferred to the Liquidating Trustee except as otherwise released by this Plan or by order of the Court.

(c)     Treatment.  Each holder of an Allowed General Unsecured Claim against Anada shall receive, in full and complete settlement, satisfaction and discharge of such Allowed General Unsecured Claim its Pro Rata share of the Anada Unsecured Carveout.  All Distributions shall be payable from time to time in the discretion of the Liquidation Trustee and the Oversight Committee.Class V General Unsecured Claims against Crimson

(a)     Impairment and Voting.  Class V is impaired by the Plan.  Each holder of a General Unsecured Claim against Crimson is entitled to vote to accept or reject the Plan.Treatment.  Each holder of an Allowed General Unsecured Claim against Crimson and each holder of an Allowed General Unsecured Claim against Ova shall receive, in full and complete settlement, satisfaction and discharge of such Allowed General Unsecured Claim its Pro Rata share of the Plan Assets.  All Distributions shall be payable from time to time in the discretion of the Liquidation Trustee and the Oversight Committee.

In addition, all of Crimson's claims against any unsecured creditor of Crimson, of whatever nature, are preserved and transferred to the Liquidating Trustee except as otherwise released by this Plan or by order of the Court.

3.7     Class VI General Unsecured Claims against Ova (including Secured Claim asserted by Jeffrey Rettig against Ova)

(a)     Impairment and Voting.  Class VI is impaired by the Plan.  Each holder of a General Unsecured Claim against Ova is entitled to vote to accept or reject the Plan.Inclusion of Secured Claim of Jeffrey Rettig asserts against Ova.  J&R Management Co. initially asserted a $300,000 Secured Claim against Ova for "Money invested and money loaned (with interest)."  *See* Ova Case, Proof of Claim No. 8-1.  This claim was amended to state a $50,000 Secured Claim by and a $250,000 General Unsecured Claim against Ova.  The $50,000 Secured Claim is purportedly secured by "25,000 pounds of dried inedible inventory from OvaInnovations" allegedly sold to Jeffrey Rettig on December 15, 2023.  *See* Ova Case, Proof of Claim No. 8-2.

Neither J&R Management Co. nor Jeffrey Rettig filed a financing statement to secure this purported security interest.  Further, assuming that the inventory purportedly sold on December 15, 2023, was still in Ova's possession as of the Petition Date and beyond, any

inventory held by Ova was sold pursuant to the Sale Order. Neither J&R Management Co. nor Jeffrey Rettig objected to entry of the Sale Order.

Jeffrey Rettig's asserted Secured Claim against Ova is thus treated as unsecured and classified with the Class VI General Unsecured Claims against Ova and is subject to further review and possible objection by the Liquidating Trustee.

In addition, all claims against J&R Management Co., Jeffrey Rettig, and any other unsecured creditor of Ova, of whatever nature, are preserved and transferred to the Liquidating Trustee except as otherwise released by this Plan or by order of the Court.

(c)    Disallowance of DFA Proof of Claim No. 18. DFA asserted a first priority secured claim against Ova in the amount of $2,265,000 and secured by Crimson's Real Estate. See Ova Case, Proof of Claim No. 18. Ova does not own Crimson's real estate, however, and Crimson's real estate has been sold, thus the DFA's claim against Ova will be treated as unsecured. Further, DFA received payment in full of all claims it has against the Debtors as part of the Sale. Thus, DFA's claim against Ova will receive no distribution under the plan and is Disallowed and expunged.Treatment. Each holder of an Allowed General Unsecured Claim against Ova and each holder of an Allowed General Unsecured Claim against Crimson shall receive, in full and complete settlement, satisfaction and discharge of such Allowed General Unsecured Claim its Pro Rata share of the Plan Assets. All Distributions shall be payable from time to time in the discretion of the Liquidation Trustee and the Oversight Committee.Class VII Equity Interests

(a)    Impairment and Voting. Class VII is impaired by the Plan. Each holder of an Equity Interest is conclusively presumed to have voted to reject the Plan and, accordingly, is not entitled to accept or reject the Plan.Treatment. Holders of Allowed Equity Interests shall not receive any distribution under the Plan on account of such Equity Interests.

**Means for Implementation of the Plan**

4.1    Establishment of the Liquidation Trust. On the Effective Date, the Liquidation Trustee shall sign the Liquidation Trust Agreement and, in its capacity as Liquidation Trustee, accept all Assets on behalf of the beneficiaries thereof, and be authorized to obtain, seek the turnover, liquidate, and collect all of the Assets not in its possession. The Liquidation Trust will then be deemed created and effective without any further action by the Bankruptcy Court or any Person as of the Effective Date. The Liquidation Trust shall be established for the purposes of, *inter alia*, (i) liquidating any non-Cash Assets; (ii) prosecuting and resolving the Causes of Action, including Avoidance Actions and Claim objections; (iii) maximizing recovery of the Assets for the benefit of the beneficiaries thereof; and (iv) distributing the proceeds of the Assets to the beneficiaries in accordance with this Plan and the Liquidation Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except only in the event and to the extent necessary for, and consistent with, the liquidating purpose of the Liquidation Trust.Oversight Committee. On the Effective Date, one member of each of the Committees and the Liquidating Trustee shall immediately, and without further need for further documentation or Bankruptcy Court approval, be deemed to act as the Oversight Committee. On the Effective Date,

14

each of the Committees' Professionals shall be retained by the Oversight Committee, without further need for documentation or Bankruptcy Court approval, on the same terms and conditions previously approved by the Bankruptcy Court.  All fees and expenses incurred by the Oversight Committee and its professionals following the Effective Date shall be paid from the Plan Assets. The Oversight Committee may authorize its own dissolution by filing with the Bankruptcy Court an appropriate notice that its responsibilities hereunder have concluded.  Unless earlier dissolved, the Oversight Committee shall be dissolved on the date the Chapter 11 Cases are closed and a final decree is entered in the Chapter 11 Cases.Appointment of the Liquidation Trustee.  The Liquidation Trustee shall be appointed by the Committees pursuant to the Confirmation Order. Following appointment, the Liquidation Trustee shall act only at the direction of the Oversight Committee and in accordance with the Plan, Confirmation Order, and Liquidating Trust Agreement.  The Liquidation Trustee may be removed at any time by the Oversight Committee, with or without cause, upon at least twenty-eight (28) days' prior written notice to the Liquidation Trustee.  In the event of resignation or removal, death or incapacity of the Liquidation Trustee, the Oversight Committee shall designate another Person or Entity to serve as Liquidation Trustee and thereupon the successor Liquidation Trustee, without any further act or need for an order of the Bankruptcy Court, shall become fully vested with all of the rights, powers, duties and obligations of the predecessor.  The Liquidation Trustee shall be entitled to compensation payable from the Assets that remain after payment in Cash and in full of all Allowed Administrative Expense Claims (including the Professional Fee Claims of Case Professionals), Priority Tax Claims, Other Priority Claims and Secured Claims, and as set forth in the Liquidation Trust Agreement.Beneficiaries of Liquidation Trust.  The holders of Allowed Claims against the Debtors entitled to Distributions shall be the beneficiaries of the Liquidation Trust.  Such beneficiaries shall be bound by the Liquidation Trust Agreement.  The interests of the beneficiaries in the Liquidation Trust shall be uncertificated and nontransferable except upon death of the interest holder or by operation of law.Vesting and Transfer of Assets to the Liquidation Trust.  Pursuant to Bankruptcy Code section 1141(b), the Assets shall vest in the Liquidation Trust (including, but not limited, to any and all rights and powers vested in the Committees pursuant to any Final Order granting investigative authority pursuant to Bankruptcy Rule 2004), free and clear of all Liens, Claims and Equity Interests, except as otherwise specifically provided in this Plan or in the Confirmation Order; *provided*, *however*, that the Liquidation Trustee may abandon or otherwise not accept any non-Cash Assets that the Liquidation Trustee believes, in good faith, have no value to the Liquidation Trust.  Any non-Cash Assets that the Liquidation Trustee so abandons or otherwise does not accept shall not be property of the Liquidation Trust.  The Assets include Causes of Actions, including, without limitation: (a) preference, fraudulent transfer and other Avoidance Actions pursuant to chapter 5 of the Bankruptcy Code and state law counterparts, (b) state and common law claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty, and (c) breach of contract claims. Liquidation Trust Expenses.  Subject to the provisions of the Liquidation Trust Agreement, all costs, expenses and obligations incurred by the Liquidation Trustee in administering this Plan, the Liquidation Trust, or in any manner connected, incidental or related thereto, in effecting Distributions from the Liquidation Trust shall be a charge against the Plan Assets.Role of the Liquidation Trustee.

(a)    Exclusive Trustee.  The Liquidation Trustee shall be the exclusive trustee of the Liquidation Trust and the Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3). The powers, rights, and responsibilities of the Liquidation Trustee shall be specified in the Liquidation Trust Agreement, this Plan, and the Confirmation Order, and shall include the authority

and responsibility to: (a) receive, manage, invest, supervise, and protect the Assets; (b) pay taxes or other obligations incurred by the Liquidation Trust; (c) retain and compensate, without further order of the Bankruptcy Court, the services of employees, professionals and consultants to advise and assist in the administration, prosecution and distribution of Assets; (d) calculate and implement Distributions of Assets; (e) investigate, prosecute, compromise, and settle, in accordance with the specific terms of the Liquidation Trust Agreement, Causes of Action vested in the Liquidation Trust; (f) resolve issues involving Claims and Equity Interests in accordance with this Plan; (g) undertake all administrative functions of the Plan, including the filing of post-confirmation quarterly reports, the payment of fees to the U.S. Trustee in accordance with 28 U.S.C. 1930 until the case is closed or converted, and the ultimate closing of the Debtors' Chapter 11 Cases.  The Liquidation Trustee is the successor to the Debtors and their Estates.

(b)    <u>Possession of Books and Records</u>.  On the Effective Date, the Liquidation Trust shall: (a) take possession of all books, records, and files of the Debtors and their respective Estates; and (b) provide for the retention and storage of such books, records, and files until such time as the Liquidation Trust determines, in accordance with the Liquidation Trust Agreement, that retention of same is no longer necessary or required.

(c)    <u>Investment of Cash</u>.  The Liquidation Trust may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by Bankruptcy Code section 345 or in other prudent investments; *provided*, *however*, that such investments are permitted to be made by a liquidation trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

(d)    <u>Right to Object</u>.  The Liquidation Trust shall have the right to object to Claims or Equity Interests.

(e)    <u>Quarterly Reports</u>.  In no event later than thirty (30) days after the end of the first full month following the Effective Date and every six months thereafter until all Cash in the Liquidation Trust has been distributed in accordance with this Plan, the Liquidation Trustee shall file with the Bankruptcy Court a report setting forth the amounts, recipients and dates of all Distributions made by the Liquidation Trustee under this Plan through each applicable reporting period.  Within seven (7) day of filing its first report under this paragraph with the Bankruptcy Court, and annually thereafter, the Liquidation Trustee shall send a letter to all beneficiaries setting forth the amounts, recipients and dates of all Distributions through each applicable reporting period made by the Liquidation Trustee under this Plan and providing a status report with regard to the Liquidation Trustee's implementation of the Plan.

(f)    <u>Tax Returns</u>.  The Liquidation Trustee shall file tax returns for the Liquidation Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Plan.  The Liquidation Trust also shall annually (for tax years in which Distributions from the Liquidation Trust are made) send to each beneficiary a separate statement setting forth the beneficiary's share of items of income, gain, loss, deduction or credit and all such holders shall report such items on their federal income tax returns; *provided*, *however*, that no such statement need be sent to any Class that is not expected to receive any Distribution from the Liquidation Trust.  The Liquidation Trust's taxable income, gain, loss, deduction or credit will be allocated to the Liquidation Trust's beneficiaries in accordance with their relative beneficial interests in the

16

Liquidation Trust.  As soon as possible after the Effective Date, the Liquidation Trust shall make a good faith valuation of assets of the Liquidation Trust, and such valuation shall be used consistently by all parties for all federal income tax purposes.  The Liquidation Trust also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidation Trust that are required by any Governmental Unit for taxing purposes.  The Liquidation Trust may request an expedited determination of taxes of the Debtors or of the Liquidation Trust under Bankruptcy Code section 505(b) for all tax returns filed for, or on behalf of, the Debtors and the Liquidation Trust for all taxable periods through the dissolution of the Liquidation Trust.  The Liquidation Trust shall be responsible for filing all federal, state, and local tax returns for the Liquidation Trust and has the authority, but not the duty, to file federal, state, and local tax returns for the Debtors and to collect any returns that may result from such filings.  The Liquidation Trust shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions made by the Liquidation Trust shall be subject to any such withholding and reporting requirements.

(g)     Allowed Tax Obligations.  The Liquidation Trust shall be responsible for payments of all Allowed tax obligations of the Debtors under this Plan, and any taxes imposed on the Liquidation Trust.

4.8     Preservation of Right to Conduct Investigations.  The preservation for the Liquidation Trust of any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 is necessary and relevant to the liquidation and administration of the Assets.  Accordingly, any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 held by the Debtors or the Committee prior to the Effective Date shall vest with the Liquidation Trust and shall continue until dissolution of the Liquidation Trust.

4.9     Prosecution and Resolution of Causes of Action.  From and after the Effective Date, prosecution and settlement of all Causes of Action transferred to the Liquidation Trust shall be the sole responsibility of the Liquidation Trustee pursuant to this Plan and the Confirmation Order.  From and after the Effective Date, the Liquidation Trustee shall have exclusive rights, powers, and interests of the Debtors' Estates to pursue, settle or abandon such Causes of Action as the sole representative of the Debtors' Estates pursuant to Bankruptcy Code section 1123(b)(3).  Proceeds recovered from all Causes of Action will be deposited into the Liquidation Trust and will be distributed by the Liquidation Trustee to beneficiaries in accordance with the provisions of the Plan and Liquidation Trust Agreement. No Causes of Action that have been otherwise released or exculpated shall be transferred to the Liquidation Trust, the Liquidation Trustee shall not have standing to pursue such claims or Causes of Action, and all such claims and Causes of Action shall be waived, released and discharged pursuant to the Plan.  A nonexclusive schedule of Causes of Action is attached to the Plan Supplement as **Exhibit B**.  The  inclusion of, or failure to include, any right, action or claim on **Exhibit B** to the Plan Supplement shall not be deemed an admission, denial or waiver of any claims, demands, rights or Causes of Action that the Liquidation Trust may hold against any Entity, and all Entities are hereby notified that the Liquidation Trust intends to preserve all such claims, demands, rights or Causes of Action.Federal Income Tax Treatment of the Liquidation Trust for the Assets.  For federal income tax purposes, it is intended that the Liquidation Trust be classified as a liquidation trust under section 301.7701-4 of the Treasury regulations and that such trust be owned by its beneficiaries.  Accordingly, for federal income tax purposes, it is intended that the beneficiaries be treated as if they had received a Distribution from

the Debtors' Estates of an undivided interest in each of the Assets (to the extent of the value of their respective share in the applicable Assets) and then contributed such interests to the Liquidation Trust, and the Liquidation Trust's beneficiaries will be treated as the grantors and owners thereof. Limitation of Liability.  No recourse will ever be had, directly or indirectly, against the Liquidation Trustee, members of the Oversight Committee, and their respective officers, directors, employees, professionals, representatives, agents, successors or assigns, by legal or equitable proceedings or by virtue of any statute or otherwise, or any deed of trust, mortgage, pledge or note, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Liquidation Trust under this Plan or by reason of the creation of any indebtedness by the Liquidation Trust or the Liquidation Trustee under this Plan. All such liabilities under this Plan will be enforceable only against, and will be satisfied only out of, the Plan Assets.  The Liquidation Trustee and its agents shall not be deemed to be the agent for any holder of a Claim in connection with Distributions made under this Plan as confirmed and/or the Liquidating Trust.  The Liquidation Trustee, members of the Oversight Committee, and their respective officers, directors, employees, professionals, representatives, agents, successors or assigns will not be liable for any act they may do, or omit to do, hereunder in good faith and in the exercise of their sound judgment.  Notwithstanding the foregoing, this section 4.11 will not apply to limit liability for gross negligence or willful misconduct. Term of the Liquidation Trust.  The Liquidation Trustee shall be discharged and the Liquidation Trust shall be terminated, at such time as (i) all Disputed Claims have been resolved, (ii) all of the Assets have been liquidated, (iii) all duties and obligations of the Liquidation Trustee under the Liquidation Trust Agreement have been fulfilled, (iv) all Distributions required to be made under this Plan and the Liquidation Trust Agreement have been made, and (v) the Debtors' Chapter 11 Cases have been closed. Retention of Professionals. Subject to the terms of the Plan and Confirmation Order to the extent they address the treatment and payment of Professional Fees incurred prior to the Effective Date, the Liquidation Trustee and Oversight Committee may retain and compensate attorneys and other professionals to assist in their duties on such terms (including on a contingency or hourly basis) as they deem reasonable and appropriate without Bankruptcy Court approval.  Representation of both the Liquidation Trustee and Oversight Committee by such professionals shall not be deemed to be a conflict of interest, make such professionals have an interest adverse to the Estates or the Debtors or otherwise not be disinterested.  Upon the appointment of the Liquidation Trustee under the Liquidation Trust Agreement, any Case Professionals retained by the Debtors shall no longer be obligated or required to continue to represent the Debtors after the Effective Date (unless such Case Professionals have agreed in writing to continue such representation) and, if such Case Professional elects to withdraw from such representation, such Case Professional shall be released and discharged from all further authority, duties, responsibilities and obligations relating to and arising from the Chapter 11 Cases and the confirmation of this Plan. The occurrence of the Effective Date shall constitute any necessary consent and court approval to withdraw from such representation.  However, such Case Professionals shall be retained after such date with respect to applications filed pursuant to sections 330 and 331 of the Bankruptcy Code, and motions seeking the enforcement of the provisions of the Plan or the Confirmation Order.

     4.14   Conflicts between Liquidation Trust Agreement and the Plan.  In the event of any inconsistencies or conflict between the Liquidation Trust Agreement and this Plan (as confirmed), the terms and provisions of this Plan (as confirmed) shall control. Cancellation of Existing Securities and Agreements.  Except for purposes of evidencing a right to Distributions under the Plan or as otherwise provided hereunder, on the Effective Date, all agreements and other

documents evidencing Claims or Equity Interests or rights of any holder of a Claim or Equity Interest against any of the Debtors, including, but not limited to, all indentures, notes, bonds and share certificates evidencing such Claims and Equity Interests and any agreements or guarantees related thereto shall be cancelled, terminated, deemed null and void and satisfied, as against the Debtors but not as against any other Person or Entity.Automatic Stay.  The automatic stay provided for under section 362 of the Bankruptcy Code shall remain in effect in the Chapter 11 Cases until the Effective Date.

4.17    Committees.  Upon the Effective Date, the Committees shall dissolve, and its members shall be released and discharged from all further authority, duties, responsibilities and obligations relating to and arising from the Chapter 11 Cases, notwithstanding anything in Section 4.2 of the Plan.  The retention and employment of the Case Professionals retained by the Committee shall terminate as of the Effective Date, *provided*, *however*, that the Committees shall exist, and their Case Professionals shall be retained, after such date with respect to applications filed pursuant to sections 330 and 331 of the Bankruptcy Code and motions seeking the enforcement of the provisions of the Plan or the Confirmation Order.Books and Records.  As part of the appointment of the Liquidation Trustee, to the extent not already transferred on the Effective Date, the Debtors shall transfer dominion and control over all of their books and records to the Liquidation Trustee in whatever form, manner or media those books and records existed immediately prior to the transfer thereof to the Liquidation Trustee.  The Liquidation Trustee may abandon all such books and records on or after ninety (90) days from the Effective Date; *provided*, *however*, that the Liquidation Trustee shall not dispose or abandon any books and records that are reasonably likely to (i) pertain to pending or contemplated litigation in which the Debtors or their current or former officers or directors are or likely will become a party or (ii) be necessary for tax filings that may be required by the Liquidation Trust. Pursuant to section 554 of the Bankruptcy Code, this Plan shall constitute a motion and notice, so that no further notice or Bankruptcy Court filings are required to effectuate the aforementioned abandonment of the books and records of the Debtors.D&O Insurance Policies.  No prepaid D&O Insurance Policy shall be cancelled, and the Debtors' directors, officers and employees who have valid claims against the D&O Insurance Policies for indemnification, defense, reimbursement, or limitation of liability may be paid from the D&O Insurance Policies to the extent of the coverage provided by the D&O Insurance Policies. As such, and notwithstanding anything in the Plan to the contrary, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, the D&O Insurance Policies, to the extent the contract providing for such is determined to be an executory contract, shall be deemed assumed by the Debtors.

4.20    Intercompany Claims.  All Intercompany Unsecured Claims shall be deemed to be Disallowed          and          extinguished          under          the          Plan.

**The Debtors**

5.1    Corporate Existence.  After the Effective Date, the Liquidation Trustee may decide, after consultation with the Oversight Committee, to (i) maintain each Debtor as a corporation in good standing until such time as all aspects of the Plan pertaining to such Debtor have been completed, or (ii) at such time as the Liquidation Trustee considers appropriate and consistent with the implementation of the Plan pertaining to such Debtor (such as, for example, after all Distributions have been made by the Liquidation Trustee pursuant to the Plan), dissolve such

Debtor and complete the winding down of such Debtor without the necessity for any other or further actions to be taken by or on behalf of such dissolving Debtor or any payments to be made in connection therewith.  The filing by each Debtor of its certificate of dissolution shall be authorized and approved in all respects without further action under applicable law, regulation, order or rule, including, without limitation, any action by the stockholders or the board of directors of each such Debtor and expressly without the need to pay any filing fees or franchise or similar taxes in order to effectuate such dissolution; *provided* that the foregoing does not limit the Liquidation Trustee's ability to otherwise abandon an interest in any Debtor if determined by the Liquidation Trustee to further the wind down of such Debtor's Estate.  From and after the Effective Date, the Debtors shall not be required to file any document, or take any other action, to withdraw their business operation from any states in which the Debtors previously conducted their business.Substantial Consummation.  Substantial consummation of the Plan under section 1101(2) of the Bankruptcy Code shall be deemed to occur on the Effective Date.Closing of the Chapter 11 Cases.  When each Disputed Claim filed against the Debtors has become an Allowed Claim or a Disallowed Claim, all Assets have been collected and converted to Cash or abandoned, and all Cash has been distributed in accordance with the terms of this Plan and the Liquidation Trust, the Liquidation Trustee shall seek authority from the Bankruptcy Court to close the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.Operation of the Debtors Between the Confirmation Date and the Effective Date.  The Debtors shall continue to operate as debtors in possession pursuant to section 1107 of the Bankruptcy Code during the period from the Confirmation Date through and until the Effective Date, and as a Liquidation Trust on and after the Effective Date.  The retention and employment of the Case Professionals retained by the Debtors shall terminate as of the Effective Date, subject to Section 4.13 of the Plan.  Upon the Effective Date, the Debtors' board of directors shall be relieved of their duties and, subject to Section 5.1(i) of the Plan, the Debtors shall be dissolved.

**Provisions Governing Acceptance or Rejection of the Plan**

6.1    Voting of Claims.  Each holder of a Claim in an impaired Class that is entitled to vote on the Plan shall be entitled to vote to accept or reject the Plan as provided in such order as may be entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order(s) of the Bankruptcy Court.Nonconsensual Confirmation.  If any impaired Class of Claims entitled to vote does not accept the Plan by the requisite statutory majorities provided in section 1126(c) of the Bankruptcy Code, the Debtors and Committees each reserve the right to amend the Plan in accordance with the terms hereof or to undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code, or both.  With respect to any impaired Classes of Claims that are deemed to reject the Plan, each of the Plan Proponents requests that the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code.

**Provisions Governing Distributions**

7.1    Distributions Made by the Liquidation Trustee.  All distributions under the Plan shall be made by the Liquidation Trustee pursuant to the Plan and the Liquidation Trust Agreement.Method of Delivery of Distributions Under the Plan.

(a)    <u>Distributions</u>.  All Distributions under the Plan shall be made in accordance with the priorities established by the Plan.  At the option of the Liquidation Trustee, any Cash payment to be made pursuant to the Plan may be made by check or wire transfer.<u>Delivery of Distributions</u>.  Distributions will be made as follows: (i) at the respective addresses set forth in the Schedules unless superseded by the address set forth on the proofs of Claim filed by holders of Claims, or (ii) at the address set forth in any written notice of address change filed with the Bankruptcy Court after the date of filing of any proof of Claim.<u>Undeliverable and Unclaimed Distributions.</u>  Subject to the terms of this section, Distributions returned to the Liquidation Trustee or otherwise undeliverable will remain in the possession of the Liquidation Trustee for the benefit of the intended beneficiary until such time as a Distribution becomes deliverable or the Liquidation Trustee makes a good-faith determination that delivery of the Distribution is impractical.  If any Distribution is returned as undeliverable, the Liquidation Trustee may, but shall not be required to, take reasonable steps to attempt to deliver the Distribution.  Where the Liquidation Trustee determines in good faith that attempts to redeliver a Distribution is not practical under the circumstances, the Cash that would have been Distributed will be distributed in accordance with the Liquidating Trust Agreement.  Any holder of an Allowed Claim that does not advise the Liquidation Trustee that it has not received its Distribution within sixty (60) days after the date of attempted Distribution will have its Claim for such undeliverable Distribution discharged and will be forever barred from asserting any such Claim against the Liquidation Trust, the Debtors, or the Assets.   In such cases, undeliverable Distributions will be distributed in accordance with the Liquidation Trust Agreement.  Distributions must be negotiated within sixty (60) days of the date of Distribution.<u>Compliance with Tax Requirements</u>.  The Liquidation Trustee may withhold and pay to the appropriate taxing authority all amounts required to be withheld pursuant to the Tax Code or any provision of any foreign, state or local tax law with respect to any payment or Distribution.  All such amounts withheld and paid to the appropriate taxing authority shall be treated as amounts distributed to such holders of the Claims or Equity Interests.  The Liquidation Trustee shall be authorized to collect such tax information from the holders of Claims or Equity Interests (including social security numbers or other tax identification numbers) as it in its sole discretion deems necessary to effectuate the Plan.  In order to receive Distributions under the Plan, all holders of Claims and Equity Interests will need to identify themselves to the Liquidation Trustee and provide all tax information the Liquidation Trustee deems appropriate (including completing the appropriate Form W-8 or Form W-9, as applicable to each holder).  The Liquidation Trustee may refuse to make a Distribution to any holder of a Claim or Equity Interests that fails to furnish such information within the time period specified by the Liquidation Trustee and such Distribution shall be deemed an unclaimed Distribution under the Plan, and, provided further that, if the Liquidation Trustee fails to withhold in respect of amounts received or distributable with respect to any such holder and the Liquidation Trustee is later held liable for the amount of such withholding, such holder shall reimburse the Liquidation Trustee for such liability.  Notwithstanding any other provision of the Plan, (a) each holder of an Allowed Claim or Equity Interest that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, and (b) no Distributions shall be required to be made to or on behalf of such holder pursuant to the Plan unless and until such holder has made

arrangements satisfactory to the Liquidation Trustee for the payment and satisfaction of such tax obligations or has, to the Liquidation Trustee's satisfaction, established an exemption therefrom.Timing of Distributions.  In the event any payment, Distribution, or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or Distribution or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.Distribution Record Date.  As of the Distribution Record Date, any applicable books and records and/or transfer registers for each of the Classes of Claims as maintained by Debtors shall be deemed closed, and there shall be no further changes made to reflect any new record holders of any Claims or Equity Interests.  The Liquidation Trustee will not have any obligation to recognize any transfer or sale of Claims or Equity Interests on or occurring after the Distribution Record Date and will be entitled for all purposes herein, and subject to all of the provisions of the Plan relating to the timing of the allowance of Claims and Equity Interests, to recognize and make distributions on account of Allowed Claims and Equity Interests only to those holders who are identified as holders of Claims and Equity Interests as of the Distribution Record Date.  Except as otherwise provided in a Final Order, the transferees of Claims or Equity Interests that are transferred pursuant to Bankruptcy Rule 3001 prior to the Distribution Record Date will be treated as the holders of such Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer may not have expired by the Distribution Record Date.Setoffs.  The Liquidation Trustee may, but shall not be required to, setoff against any Claim (for purposes of determining the Allowed amount of such Claim in respect of which distribution shall be made), any claims of any nature whatsoever that the Debtors may have or had against the holder of such Claim.Interest on Claims.  Except as specifically provided for in this Plan or the Confirmation Order or required by the Bankruptcy Code, interest shall not accrue on Claims and no holder of a Claim shall be entitled to interest on any Claim accruing on or after the Petition Date.  Interest shall not accrue on any General Unsecured Claim that is a Disputed Claim in respect of the period from the Effective Date to the date a final Distribution is made thereon if and after that Disputed Claim becomes an Allowed Claim.  Except as expressly provided herein or in a Final Order of the Bankruptcy Court, no prepetition Claim shall be Allowed to the extent that it is for post-petition interest or similar charges.No Distribution in Excess of Allowed Amount of Claim.  Notwithstanding anything to the contrary contained in the Plan, no holder of an Allowed Claim shall receive in respect of that Claim any Distribution in excess of the Allowed amount of such Claim.

(j)      *De Minimis* Distributions; Charitable Donation.  Notwithstanding anything to the contrary therein, the Liquidation Trustee shall not be required to make a Distribution to any holder of an Allowed Claim if the dollar amount of the Distribution is less than $25.  On or about the time that the final Distribution is made, the Liquidation Trustee may make a charitable donation with undistributed funds if, in the reasonable judgment of the Liquidation Trustee, the cost of calculating and making the final Distribution of the remaining funds is excessive in relation to the benefits to the or holders of Claims who would otherwise be entitled to such Distributions, and such charitable donation is provided to an Entity acceptable to the Oversight Committee and not otherwise related to the Debtors, the Oversight Committee or its members, or the Liquidation Trustee.

(k)    <u>Withholding from Distributions</u>.  Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from Distributions pursuant to the Plan.  The Liquidation Trustee may withhold from amounts distributable pursuant to the Plan to any Person or Entity any and all amounts, determined in the sole and reasonable discretion of the Liquidation Trustee, required to be withheld by any law, regulation, rule, ruling, directive, or other governmental requirement.

(l)    <u>No Distribution on Late-Filed Claims</u>.  Except as otherwise provided in a Final Order of the Bankruptcy Court, any Claim as to which a proof of Claim was required to be filed and was first filed after the applicable bar date in the Chapter 11 Cases, including, without limitation, under the Bar Date Order, any bar date established in the Plan or in the Confirmation Order, shall automatically be deemed a late-filed Claim that is Disallowed in the Chapter 11 Cases, without the need for (a) any further action by the Liquidation Trustee or (b) an order of the Bankruptcy Court.  Nothing in this paragraph is intended to expand or modify the applicable bar dates or any orders of the Bankruptcy Court relating thereto.

**Article VIII**

**Provisions For Resolving and Treating Disputed Claims
and Administrative Expense Claims**

8.1    <u>Objections to and Resolution of Administrative Expense Claims and Other Claims</u>.

(a)    <u>Authority of Liquidation Trustee to Object</u>.  The Liquidation Trustee, in consultation with the Oversight Committee, shall have the exclusive right and authority, without approval of the Bankruptcy Court, to (a) make and file objections to all Claims and (b) compromise, settle, otherwise resolve or withdraw any objections to Claims.

(b)    <u>Objection Deadline</u>.  The Liquidation Trustee shall have six (6) months after the Effective Date to file all objections to Claims (except for Professional Fee Claims) and serve such objections upon the holders of the affected Claims.  The Liquidation Trustee shall have the right to seek authority from the Bankruptcy Court to extend the dates for filing and serving the objections to the holders of such Claims.

8.2    <u>No Distribution Pending Allowance, Subsequent Distribution</u>.  Notwithstanding any other provision of the Plan, no Distribution shall be made on account of any Disputed Claim unless and until such Claim is Allowed in accordance with the provisions of the Plan.  If a Disputed Claim has not been Allowed as of the date for any Distribution on account of such Claim under the Plan, the amount otherwise distributable to the holder of such Claim under the Plan shall be deposited into the applicable Disputed Claims Reserve and held pending determination of such Claim as an Allowed Claim or Disallowed Claim for purposes of the Plan.  <u>Excess Funds</u>.  Any amounts remaining in the Disputed Claims Reserve after all Disputed Claims as to which payment has been made into the Disputed Claims Reserve have become Allowed Claims or have otherwise been resolved by Final Order of the Bankruptcy Court, subject to the provisions of Article VII of the Plan, shall be distributed by the Liquidation Trustee in accordance with this Plan.<u>Estimation</u>. The Debtors may, at any time prior to the Effective Date, request that the Bankruptcy Court estimate any contingent or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code

23

regardless of whether the Debtors have objected to such Claim.  In the event the Bankruptcy Court estimates any contingent or Disputed Claim, the estimated amount may constitute a maximum limitation on such Claim, as determined by the Bankruptcy Court.  Notwithstanding this, the Liquidation Trustee may elect to pursue any supplemental proceedings to object to the allowance and payment of such Claim any may request the Bankruptcy Court to estimate any contingent of Disputed Claims subsequent to the Effective Date.<u>Remedies Not Exclusive</u>.  All of the Claims objection and estimation procedures set forth in this Article VIII are cumulative and not exclusive of one another.

## Article IX

### Executory Contracts and Unexpired Leases

9.1      <u>Deemed Rejected</u>.  Unless already assumed or rejected by Final Order of the Bankruptcy Court (which may be an order entered in connection with the Sale), all executory contracts and unexpired leases of the Debtors which are not the subject of a pending application to assume as of the Confirmation Date shall be deemed rejected on the Effective Date except as provided in Section 9.3 of the Plan.

9.2      <u>Rejection Claims.</u>

(a)      <u>Rejection by Motion</u>.  Holders of Claims as a result of the rejection, other than by the terms of this Plan, of an executory contract or unexpired lease shall follow the procedures previously set forth in such order authorizing rejection for filing a claim, failing which such Claim shall be Disallowed in its entirety.<u>Rejection by the Plan</u>.  Holders of Claims as a result of the rejection of an executory contract or unexpired lease by the terms of the Plan shall file a Proof of Claim for rejection damages within thirty (30) days after the Effective Date, failing which such Claim shall be Disallowed.<u>Assumed Contracts</u>.  The Debtors shall assume those executory contracts and unexpired leases set forth in **Exhibit C** attached to the Plan Supplement.  If such counterparty to the proposed executory contracts and unexpired leases to be assumed under this Plan disagrees with the cure amount set forth in **Exhibit C** to the Plan Supplement, the party must file an objection with the Bankruptcy Court not later than (7) days before the Confirmation Hearing.  If an objection cannot be resolved by the Confirmation Hearing, the objection will be adjourned to      a      date      to      be      determined      by      the      Court.

**Effect of Confirmation**

10.1      <u>Term of Bankruptcy Injunction or Stays</u>.  Unless otherwise provided in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.**<u>Injunction</u>.  Except as otherwise expressly provided in or to enforce the Plan or the Bankruptcy Code, the Confirmation Order or a separate order of the Bankruptcy Court, all Persons or Entities who have held, hold or may hold Claims against the Debtors and/or their Estates are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors, the Liquidation Trust or the Liquidation**

**Trustee with respect to any such Claim in any forum other than the Bankruptcy Court, unless the Bankruptcy Court declines to assert jurisdiction or otherwise approves proceeding in another forum (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors, the Liquidation Trust or the Liquidation Trustee on account of any interest from such Claim, (c) creating, perfecting or enforcing any Lien or encumbrance of any kind against the Debtors, the Liquidation Trust, the Liquidation Trustee, or against the Assets or Plan Assets, (d) commencing or continuing in any manner any action or other proceeding of any kind with respect to any claims which are extinguished, dismissed or released pursuant to the Plan, and (e) asserting any right of setoff or subrogation of any kind against any obligation due from any Debtor, or their successors and assigns, or against any of their Assets or Plan Assets, except to the extent a right to setoff or subrogation is asserted with respect to a timely filed proof of Claim.  For the avoidance of doubt, nothing in the Plan or the Confirmation Order is intended to enjoin or otherwise prevent any creditor or other party in interest from enforcing the terms of the Plan and the Confirmation Order in the Bankruptcy Court.**<u>Binding Effect</u>.  Subject to the Confirmation Order becoming a Final Order, on and after the Effective Date, the Plan shall be binding upon and inure to the benefit of the Debtors and/or their Estates preserved and assigned to the Liquidation Trust and the holders of Claims and Equity Interests and their respective successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not such holder is entitled to a distribution under the Plan.

**Conditions to Confirmation**

11.1    <u>Conditions Precedent to Confirmation</u>.  The following are conditions precedent to the entry of the Confirmation Order, unless such conditions, or any of them, have been satisfied or duly waived pursuant to Section 11.3 of the Plan;The Confirmation Order is in form and substance reasonably satisfactory to the Debtors and the Committees.

(b)    The Plan shall not have been materially amended, altered or modified, unless such material amendment, alteration or modification has been made in accordance with Section 14.4 of the Plan.

(c)    All exhibits to the Plan and the Plan Supplement are in form and substance reasonably satisfactory to the Debtors and the Committees.

11.2    <u>Conditions Precedent to Occurrence of Effective Date</u>.  The following are conditions precedent to the occurrence of the Effective Date of the Plan, unless such conditions, or any of them, have been satisfied or duly waived pursuant to Section 11.3 of the Plan;The Bankruptcy Court shall have entered the Confirmation Order.

(b)    The Bankruptcy Court shall have entered an order (contemplated to be part of the Confirmation Order) approving and authorizing the Liquidation Trustee and the Oversight Committee to take all actions necessary or appropriate to implement the Plan, including execution and delivery of the Liquidation Trust Agreement, if not previously authorized by the Bankruptcy Court, and the other transactions contemplated by the Plan and all contracts, instruments, releases and other agreements or documents entered into or delivered in connection with the Plan.

(c)      No stay of the Confirmation Order shall then be in effect.

(d)      The Plan and the exhibits thereto, and the Plan Supplement and the exhibits thereto, shall not have been materially amended, altered or modified, unless such material amendment, alteration or modification has been made in accordance with Section 14.4 of the Plan.

(e)      the Debtors shall have sufficient funds to fully fund, and shall have funded, the Priority Claim Reserve and the Professional Fee Escrow.

11.3      <u>Waiver of Conditions</u>.  The conditions precedent to the entry of the Confirmation Order and to the occurrence of the Effective Date may be waived at any time by a written agreement of the Debtors and the Committees, without an order of the Bankruptcy Court.<u>Notice of Effective Date</u>.  Within seven (7) days after the Effective Date, the Liquidation Trustee shall file a notice of the occurrence of the Effective Date with the Bankruptcy Court.

**Releases, Settlements, and Exculpations, and Related Provisions**

12.1      **<u>Exculpation</u>.  Unless an Exculpated Party has received notice of a potential claim from the Liquidation Trustee within sixty (60) days after the Effective Date, the Exculpated Parties shall neither have nor incur any liability to any Person for any and all Claims and Causes of Action arising on or after the Petition Date and through the Effective Date, including any Claim or Cause of Action relating in any way to acts taken or omitted in connection with, or related to, formulating, negotiating, preparing, disseminating, soliciting, implementing, administering, confirming or consummating the Chapter 11 Cases, Plan, the Disclosure Statement, the Liquidation Trust Agreement, the Sale, the Sale Order, or any other contract, instrument, release or other agreement or document created or entered into in contemplation of or in connection with any of the foregoing; *provided*, *however*, that the foregoing provisions of this section shall have no effect on the liability of any Person that results from any such act or omission that is determined in a Final Order to have constituted fraud, gross negligence or willful misconduct.  Without limiting the generality of the foregoing, the Exculpated Parties, and their respective Professionals shall be entitled to and granted the protections and benefits of Section 1125(e) of the Bankruptcy Code.<u>Injunction</u>. Holders of Claims against or Equity Interests in the Debtors arising before the Effective Date shall be enjoined from taking any action against any Exculpated Party contrary to Article XII hereof.  Nothing contained in this Article XII shall prohibit the holder of a Claim from litigating its right to have such Claim declared an Allowed Claim and paid in accordance with the distributions provisions of this Plan or enjoin or prohibit the interpretation or enforcement by the holder of a Claim or any obligations of the Debtor or the Liquidation Trust under the Plan.**

12.3      <u>Preservation of Causes of Action</u>.

(a)      <u>Vesting of Causes of Action</u>.

i.      Except as otherwise provided in the Plan or Confirmation Order, in accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that the

Debtors and the Estates may hold against any Person or Entity shall vest in the Liquidation Trust on and after the Effective Date.

ii.  Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, the Liquidation Trustee shall have the exclusive right to institute, prosecute, abandon, settle or compromise any Causes of Action that were held by the Debtors and the Estates, in its sole discretion and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in one or more of the Chapter 11 Cases.

(b)  <u>Preservation of All Causes of Action Not Expressly Settled or Released</u>.

i.  Unless a Cause of Action against a holder or other Entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order (including the Confirmation Order) of the Bankruptcy Court, the Debtors and their Estates expressly reserve such Cause of Action for later adjudication or administration by the Liquidation Trustee (including, without limitation, Causes of Action not specifically identified or described in the Plan or elsewhere or of which the Debtors or the Committees may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors or the Committee at this time or facts or circumstances which may change or be different from those the Debtors or the Committee now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, Plan or Confirmation Order, except where such Causes of Action have been released in the Plan or any other Final Order (including the Confirmation Order).  In addition, the Debtors and their Estates expressly reserve the right of the Liquidation Trustee to pursue or adopt any claims alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

ii.  Subject to the immediately preceding paragraph, any Entity to whom the Debtors have incurred an obligation (whether on account of services, purchase or sale of goods or otherwise), or who has received services from the Debtors or a transfer of money or property of the Debtors, or who has transacted business with the Debtors, or leased equipment or property from the Debtors should assume that any such obligation, transfer, or transaction may be reviewed by the Liquidation Trustee subsequent to the Effective Date and may be the subject of an action after the Effective Date, regardless of whether: (i) such Entity has filed a proof of Claim against the Debtors in the Chapter 11 Cases; (ii) the Debtors have objected to any such Entity's proof of Claim; (iii) any such Entity's Claim was included in the Schedules; (iv) the Debtors have objected to any such Entity's scheduled Claim; or (v) any such Entity's scheduled Claim has been identified by the Debtors as disputed, contingent or unliquidated.

12.4 <u>Releases of Liens</u>.  Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective

Date, all mortgages, deeds of trust, liens, pledges or other security interests against property of the Estates shall be fully released and discharged and all of the right, title and interest of any holder of such mortgages, deeds of trust, liens, pledges or other security interest shall revert to the Debtors and the Liquidation Trustee.

## Article XIII

## Retention of Jurisdiction

13.1    <u>Jurisdiction of Bankruptcy Court</u>.  The Bankruptcy Court shall retain jurisdiction of all matters arising out of, and related to, the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)    To hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, if any are pending or are filed prior to the Effective Date, and the allowance of any Claims resulting therefrom;

(b)    To hear and determine any and all adversary proceedings, applications and contested matters, even if filed after confirmation of the Plan;

(c)    To hear and determine any objections to Administrative Expense Claims, Priority Tax Claims, Other Priority Claims, or any Claims or Equity Interests set forth in any Class;

(d)    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(e)    To issue such orders in aid of execution and consummation of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(f)    To consider any amendments to or modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(g)    To hear and determine all applications for compensation and reimbursement of expenses of professionals under sections 330, 331 and 503(b) of the Bankruptcy Code;

(h)    To recover all Assets of the Estates, wherever located;

(i)    To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(j)    To hear and determine any requests to sell any Asset pursuant to section 363 of the Bankruptcy Code;

(k)    To hear any other matter not inconsistent with the Bankruptcy Code;

(l)      To hear and determine all actions pursuant to sections 105, 502, 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code, any collection matters related thereto, and settlements thereof, and any other Causes of Action properly within the jurisdiction of the Bankruptcy Court;

(m)      To hear and determine any disputes concerning quarterly fees owing or claimed to be owing to the Office of the U.S. Trustee under section 1930(a)(6) of title 28 of the United States Code;

(n)      To enter a final decree closing the Chapter 11 Cases;

(p)      To determine any disputes regarding allowance of post-Confirmation Date fees and expenses; and

(q)      To address, hear and determine any issue or dispute that arises under the Liquidation Trust Agreement.

## Article XIV

### Miscellaneous Provisions

14.1     <u>Effectuating Documents and Further Transactions</u>.  The Liquidation Trustee is authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the transactions set forth in, and the terms and conditions of, the Plan and the Liquidation Trust Agreement.

14.2     <u>Exemption from Transfer Taxes</u>.  Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes or issuance of debt or equity securities under the Plan, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, registration, licensing, sales or similar tax.

14.3     <u>Post-Effective Date Fees and Expenses</u>.  From and after the Effective Date, the Liquidation Trustee shall in the ordinary course of business and without the necessity of any approval by the Bankruptcy Court, pay the reasonable fees and expenses of professional persons incurred by them after the Effective Date in connection with the implementation and consummation of the Plan and the Liquidation Trust Agreement, the reconciliation of Claims, the prosecution of Causes of Action, or any other matters as to which such professionals are employed; provided however, each month, each such professional shall serve a monthly fee statement on the Liquidation Trustee by the 20th of each month for the preceding month.  If no objection is filed within ten (10) days of service of such monthly fee statement, the Liquidation Trustee may pay the fees and expenses reflected in the monthly fee statement.  If a timely objection is asserted with respect to payment of amounts reflected in the monthly fee statement, the Liquidation Trustee may pay the non-disputed portion of the amount sought in the monthly fee statement.  If the parties are

unable to resolve a dispute related to a monthly fee statement, the Bankruptcy Court shall retain jurisdiction to address any such disputes.

14.4    <u>Amendment or Modification of the Plan</u>.    Alterations, amendments or modifications of or to the Plan may be proposed in writing collectively by the Proponents at any time prior to the Confirmation Date, provided that (a) the Plan, as altered, amended or modified satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code, (b) the Proponents mutually agree to such alterations, amendments or modifications of or to the Plan, and (c) the Proponents shall have complied with section 1125 of the Bankruptcy Code.  The Plan may be altered, amended or modified by the Proponents at any time after the Confirmation Date and before substantial consummation, provided that (a) the Plan, as altered, amended or modified, satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code, (b) the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under section 1129 of the Bankruptcy Code, and the circumstances warrant such alterations, amendments or modifications, and (c) the Proponents mutually agree to such alterations, amendments or modifications of or to the Plan.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder or any distribution to be received in connection with any settlement pertaining to such holder. Prior to the Effective Date, the Proponents may make appropriate technical adjustments and modifications to the Plan or the Disclosure Statement without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Equity Interests.

14.5    <u>Severability</u>.  In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the holder or holders of such Claims or Equity Interests as to which the provision is determined to be invalid, void or unenforceable.  The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan and shall not require the resolicitation of any acceptance or rejection of the Plan unless otherwise ordered by the Bankruptcy Court.

14.6    <u>Revocation or Withdrawal of the Plan</u>.  Upon mutual agreement, the Plan Proponents reserve the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Plan Proponents revoke or withdraw the Plan, the Plan shall be deemed withdrawn and shall be deemed null and void.  In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Debtors or any other Person or Entity or to prejudice in any manner the rights of the Debtors or any Person or Entity in any further proceedings involving the Debtors.

14.7    <u>Notices</u>.  All notices, requests and demands to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

Debtors

c/o Krekeler Law, S.C.
26 Schroeder Court
Suite 300
Madison, WI 53711
Attn: Kristin J. Sederholm

Oversight Committee
c/o Miller, Canfield, Paddock and Stone, PLLC
150 West Jefferson, Suite 2500
Detroit, MI 48226
Attn: Marc Swanson and Ronald Spinner

-and-

c/o Schafer and Weiner PLLC
40950 Woodward Ave., Ste. 100
Bloomfield Hills, MI 48304

Liquidation Trustee
[Identity and contact Information to be provided in the Liquidation Trust Agreement.]

14.8    Governing Law.  Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent any exhibit to the Plan provides otherwise, the rights and obligations arising under the Plan and the Liquidation Trust Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Wisconsin, without giving effect to the principles of conflicts of law of such jurisdiction.

14.9    Headings.  Headings are used in the Plan for convenience and reference only and shall not constitute a part of the Plan for any other purpose.

14.10    Exhibits and Schedules.   All exhibits and schedules to the Plan, the Plan Supplement, and all exhibits and schedules to the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full herein.

14.11    Filing of Additional Documents.  On or before confirmation of the Plan, the Debtors shall file with the Bankruptcy Court such agreements and other documents, if any, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

14.12    Plan Controls.  To the extent the Plan is inconsistent with the Disclosure Statement or the Liquidation Trust Agreement, the provisions of the Plan shall be controlling.

14.13    Subordination Rights.  With the exception of any Claims of an Insider of the Debtors or an Affiliate of the Debtors, the classification and manner of satisfying all Claims under the Plan takes into consideration all contractual, legal and equitable subordination rights, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code or

otherwise, that a holder of a Claim may have against other holders of Claims, which subordination rights are expressly reserved under the Plan and assigned to the Liquidation Trust.

14.14  Section 1125(e) of the Bankruptcy Code.  The Debtors have, and upon confirmation of the Plan shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

14.15  Return of Security Deposits.  All security deposits provided by the Debtors to any Entity at any time after the Petition Date not otherwise sold as part of the Sale shall be turned over to the Liquidation Trustee within fourteen (14) days after the Effective Date, without deduction or offset of any kind.

14.16  Tax Liability.  The Liquidation Trustee is hereby authorized to request an expedited determination under section 505(b) of the Bankruptcy Code of any tax liability of the Debtors for all taxable periods ending after the Petition Date through and including the Effective Date.

*[Signature page follows.]*

**KREKELER LAW, S.C.**

Dated: March 7, 2025                    By: */s/ Kristin J. Sederholm*
                                        Kristin J. Sederholm
                                        Colton J. Chase
                                        Attorneys for Debtors and
                                        Debtors in Possession


**SCHAFER AND WEINER, PLLC**

Dated: March 7, 2025                    By: */s/John J. Stockdale, Jr.*
                                        John J. Stockdale, Jr.
                                        Attorneys for the Official Committee of
                                        Unsecured Creditors of Crimson Holdings, LLC


**MILLER, CANFIELD, PADDOCK AND STONE, P.L.C**

Dated: March 7, 2025                    By: */s/Marc N. Swanson*
                                        Marc N. Swanson
                                        Ronald A. Spinner
                                        Attorneys for the Official Committee of
                                        Unsecured Creditors of OvaInnovations, LLC